Hatcher v. MDOW Insurance Company. Mr. Easley.  May it please the court. Sirs, the trial court we contend in this case made rulings on factual issues that should have been submitted to the jury. At the outset, judges, I wish to concede that in my first argument I had the wrong statute. It's incredible that I did that. Proceed. Go ahead. I suppose nobody's ever done that before. Proceed. Go ahead. Proceed. Proceed. Yes, sir. The correct statute was one that was enacted in 03 that did in fact require notice to the insurer of the change at renewal. Still, that does not kill our case. In this case, we had submitted a summary judgment motion just asking the judge to rule on the ambiguity of the policy and that the endorsement was invalid. The judge, rather than just denying that motion, leaped forward on a number of issues that took the jury issues away. Primarily, it was MDOW, the insurance company's obligation to prove the change was valid by clear and convincing evidence under Arkansas law. They were relieved of those burdens by the judge's ruling. The judge went forward and said that, I mean, she just assumed that notice was valid. There were certain factual issues about that. Number one, the defendant was relieved of putting on any information authenticating the notices. Judges presumed that they were true, sent out properly, received. Well, once a summary judgment motion's in play, you can't rest on your pleadings. You've got to come forward with affidavits, and you've got to say, we didn't get the notice. Exactly. Right. Did you do that? Well, we asked for a jury trial on the issue. Specifically, we asked the judge, we said, this is a vague contract. We said we think it needs to be decided by a jury, and we did, sir. Well, even if you assume the original contract was vague. Was what? Vague. Yes, sir. There wasn't any vagueness in the contract that was at issue at the time of the loss, as I understand it. Let me finish. Yes, sir. As I understand, the issue is at some point between the initial contract and the one that's in existence at the time of the loss. Yes. The insurance company modifies the contract to clarify. Yes. They don't say it's a change. They just call it a clarification. Yes. So what did they do or not do so that that clarification wasn't valid? What's the issue on that clarification that you claim makes it invalid? As I started to say, Judge, that's an excellent question because we were prevented from challenging the notice. We were prevented from challenging whether the notice was sent. There was a discrepancy in the notices. Two of them were sent, strangely enough. One was December 1 of 13, and it did not have any notice of the amount that would be changed. And the second one was incredibly an undated notice. Now, does that mean that the first notice came back and that they had sent out another one and that the other one was late and too late for the statute? We don't know that because those issues were taken completely away from us by the court taking the burden away from MDAL to prove each and every step that their endorsement was valid. And we were denied that. We still believe that the cases, the slaughter case and the state farm case, are valid. But we have to admit that the statute that controls this case was a 2003 statute. And so those cases, although they state correct contract law, they are not exactly on point in this case. Counsel, do you agree this was not a cancellation situation? This was a renewal situation? I do. Good. Proceed. I do. Yes, sir. Let's see. I don't want to repeat anything here. As I said, the AMI requires that the person who is charged with alleging an alteration unilateral authorization of a contract has the burden of proving that by clear and convincing evidence. And we were far from that at this trial, Your Honors. And certainly, as Judge Malloy has pointed out, we would have liked to have discussed whether the policy was ambiguous. But, you know, we could have discussed that had we been able to make a jury question on the notice issue. The court also ruled in chambers before trial. It was heavily argued. And you probably saw that. It was heavily argued that our client, who is a janitor, by the way, had been asked without any explanation at deposition, you know, you knew this was an ACV policy all along. He said yes. End of questions. We told the judge we wanted him to explain that because he would have said I thought that meant dollar for dollar. And she would not let him do that. And I understand. I understand. But that would have created a credibility issue and should not have created an issue where we were just barred from having our client explain. Help me with a fact. You moved for summary judgment on an issue? Did you move for summary? I know there's a jury trial eventually. Yes, sir. Did you move for summary? Did they move for summary judgment? No, sir. Okay. Thank you. Go ahead. No, sir. You know, had they moved for summary judgment, I think it would have made a difference. But they did not do that. The judge went, you know, said no to us and then went all the way to the finish line basically with them. So, at any rate, Your Honor, the second portion, I haven't got much time on this, but the second portion of the argument is to valuation. Now, that's okay, yes or no. You didn't make a real offer of proof on this, did you, counsel? Of what? We did not. Of what the witness would really have said? No, sir. Mr. Hatcher really would have said? We did not. Okay. That's correct. What my son did who was trying the case, what he did was to try to pick out as many things as he could where he could get to this issue. But the judge before that had made it very clear that she expected previous experience in terms of jobs or something in the nature of depreciation. Well, she uses the word foundation several, several times. She does. On these pages. What was she kind of hinting to you? Show us more. She was hinting to us that this man didn't qualify to testify. As counsel said, this man didn't qualify to testify because he hadn't ever worked for an insurance company and done depreciation work. Or be an accountant. An accountant could testify. Yes. Go ahead. Yes. Yes. And the cases cited by Emdow here are very interesting because they are so complex. They are beyond my pay grade so far as the ability to understand the different kinds of depreciation that were discussed in the Jane case and the James River case. And I just, the judge granted their, I'm sorry, sustained their objection. And we had very, very little farther we could go with that, Your Honor, to be honest. Okay. The point here being that this gentleman had built the house with his own hands. Lived there 20 years. Yes. Yeah. Yes. Built the house with his own hands. Right. And if anybody, certainly not an insurance company adjuster who uses Zach to make a hearsay document, you know, I think you understand my point. We do. All right. That's all I have for now. Save your time for rebuttal. Thank you, sir. Save your time. Ms. Rowlett, you know that adjust, too, down there on your right hand, you can take the, by the right hand right here, look at me. I'm sorry. By your right hand right there, you can take it down if you wanted to. You don't have to. I'm fine. However you want to do it. You can see me. Oh, we can, for sure. Proceed. Thank you, Your Honors. On the first point, I would point out there was no improper modification of this insurance policy at any time. As Judge Malloy pointed out, in 2014 and in 2015, Mr. Hatcher was sent a renewal package that included the insurance policy with the actual cash value endorsement attached, included a declarations page that said an actual cash value endorsement is attached. This was 45 days or more before the renewal date, which is in compliance with a proper Arkansas statute. And copies of those policies and renewal packages, including the letters that were sent with them, are attached to an affidavit we filed by Mr. Gerzetich, underwriting systems manager for the insurance company, as a response to their motion for caution. I haven't looked at the affidavit. Does the affidavit say they didn't come back to the company and they were just sent out in due course? Normal business practice? It says the policy was renewed each year up to the present date. A true and correct copy of each of those renewal policies are attached hereto as exhibits BG. What about the notice? He was trying to say we don't know the notice got anywhere. The notice is actually included. If you look at those declarations pages for those, the one we're really talking about is 2015 policy. The part of the declarations page that says forms attached to this policy includes MDOW cover letter, homeowners cover letter, and MDOW rate increase, rate increase letter. Those were actually sort of made part of the policy, the renewal policy that was sent to Mr. Hatcher for the policy years 2014 and 2015. Well, if you assume it's a change, I understand that. Doesn't the Arkansas statute say you have to do more than just send a renewal? Doesn't it say you have to highlight to the homeowner the change? It said if you assume there's a change, which is a big assumption because we presented all kinds of evidence that from 2011 forward. Well, let's assume it's a change. You did not comply with that part of the statute, though. Is that correct? Well, he was sent a copy of the policy with the declarations page. But doesn't Arkansas require more than that? Well, it says alteration of policy provision. But the point is, again- I mean, the letter you sent, which is in your, it says we've added an animal liability limitation. Well, that's a lot different than saying we're going from a replacement to actual cash value. But they had no reason to say we've added an actual cash value endorsement because the policy had an actual cash value endorsement on it from 2011 through 2015. And it was renewed each year. The explanation for why it was not listed on the declarations pages for the 2011, 2012, and 2013 years is contained in the affidavit of James Todd, who is the president of MDOW Insurance Company. And he explained that prior to 2014, the section of the declarations page for endorsements was entitled Additional Endorsements Attached to Policy. At that time, well, for as long as the life of this policy, an ACV endorsement has been a mandatory endorsement for this insurance company in the state of Arkansas. Because it was mandatory and not optional, it was not listed on the declarations pages in 2011, 2012, and 2013, although it was attached. And it is the duty of a policyholder in the state of Arkansas to educate himself concerning these policies. But in 2014, the title of that part of the declarations page was changed to say Forms Attached to this Policy. And from that time forward, including for the time of the fire, then both optional and mandatory endorsements were listed on the declarations page. So there really wasn't a change in the policy other than the format of the declarations page. And that's explained again in that affidavit. The Arkansas law doesn't say what a change is, does it? It doesn't say how material, how big, how substantial a change has to be? It does not. Is there an Arkansas case law that tells us how big, substantial, material a change has to be? I don't think so. I'm trying to find the statute. It just says an offer of renewal is to be sent 30 days prior to expiration. This is Statute 2388-105. The offer is to be in writing, is to give the amount of the premium, and a description of any change in a policy provision. That's the language. And when you look at that language, there wasn't ever any change in a policy provision in these policies. There was only a change in the format of the declarations. Now, that's the reason I ask you how big a change it's got to be and what kind of change. You say there's no law on that? Pardon me? You say there's no law on how big a change it has to be? No. Thank you. Not to my knowledge, Your Honor. Now, before your time's up, surely a homeowner in Arkansas, especially one who's lived there 20 years and built a home, a homeowner can testify as to the value of it and the depreciation of it, right? The value of it, Your Honor. They can testify to depreciation, too. Depreciation is different in two sets of values, trust me. Under every accounting system and every tax system that's ever been invented, depreciation is different in two values, trust me. Okay. But, Your Honor, there's no case law that says that for Arkansas. For Arkansas, what you've got are every domain cases. But they surely have. Let me interrupt you. Let me interrupt you quickly. Surely Arkansas says plain and ordinary meaning of words, right? Yes. Yeah. Depreciation is a plain and ordinary meaning, too. Go ahead. Well, except the term actual cash value in an insurance policy such as this one has a specific definition. And depreciation is sort of a term of art that depends on a lot of different things. But to cut to the chase, I'm interrupting you intentionally. There's not an Arkansas case that says an owner can't testify about depreciation, right? There is not. Right. No. There is a Tenth Circuit case which is discussed in our brief and is, frankly, the only case that I could find on the topic in the insurance context, in the context of establishing ACV. Is there any question that he was qualified to testify as to value? I don't think so. I think the judge in her conversation with him at the bench said, but you're not asking that question. What happened was he was – So, I mean, this really boils down to they didn't ask the question the right way. If they would have just said, how much do you think the roof is – how much do you think that your house is worth, he could have testified? I think so. And if he had said, you built this house, how much was it worth 20 years ago and how much is it worth now, he'd testify to that too, right? Two values? I would assume so. Yeah. And the difference between those two is depreciation. Magic. Go ahead. But the James River case said this landowner was, even though he owned the property, was not qualified to testify under Federal Rule 701C because it was more than a simple application of mathematics to come up with a figure for depreciation because depreciation is complicated. Different materials depreciate at different rates depending on whether they're exposed to the elements. And that was a commercial building that he didn't build and didn't live in, right? That's correct. Correct. That's correct, Your Honor. But nevertheless, that is the only authority out there in the insurance context, I think. The Arkansas cases are eminent domain and tort damages. Different measures of damages. Thank you for your argument. Mr. Eesley. Your Honor, unless you have questions for me, I'm going to weigh my thoughts. Okay, great. Let's see if there are questions. Judge Ross? Judge Malouf? No. No questions. Thank you. Thank you both for your arguments. Case 17-2710 is submitted for decision.